UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHRYN BUTTERFLY-BILES, | ) |
| Plaintiff and Counter-Defendant, | ) |
| v. | ) Case No. 09-CV-0086-CVE-PJC |
| STATE FARM LIFE INSURANCE COMPANY, | ) |
| Defendant and Counter-Plaintiff, | ) |
| v. | ) |
| ROBYN BILES MCCORMICK and DAWN BILES HARRINGTON, | ) |
| Counter-Defendants. | ) |

**OPINION AND ORDER**

Now before the Court is Defendant State Farm Life Insurance Company's Motion for Summary Judgment (Dkt. # 55). Defendant State Life Insurance Company (State Farm) seeks summary judgment on Kathryn Butterfly-Biles' claims for breach of insurance contract and bad faith.[1]

**I.**

The following facts are undisputed. Butterfly-Biles was the wife of Donald Biles. On or about August 1, 2001, Butterfly-Biles notified the Okanogan County, Washington Sheriff's Office that Donald Biles was missing. Dkt. # 55-4, at 5. Five years later, on August 5, 2006, a firefighter discovered Donald Biles' remains in a forest in a Washington state park. Dkt. ## 55-5, at 1; 55-7,

---

[1] "The phrase 'bad faith' is used herein as a shorthand reference to a breach of the duty of good faith and fair dealing. Brown v. Patel, 157 P.3d 117, 121 n.5 (Okla. 2007).

at 1. The medical examiner determined that the cause of death was a gunshot wound to the head, and that the circumstances of Donald Biles' disappearance, the scene investigation associated with the recovery of his remains, and the anatomic findings of his skull were consistent with homicide. Dkt. # 55-7, at 1. The death certificate listed homicide as the manner of death. Dkt. # 55-8, at 1.

Butterfly-Biles is the primary beneficiary of Donald Biles' life insurance policy No. 07695506, issued by State Farm (the policy).[2] Dkt. # 55-3, at 1. Counter-defendants Robyn Biles McCormick and Dawn Biles Harrington,[3] Donald Biles' daughters, are the successor beneficiaries. Id. On April 15, 2008, Butterfly-Biles made a claim for life insurance proceeds under the policy.[4] Butterfly-Biles listed the manner of death as homicide on the claimant's statement she submitted to State Farm.[5] Dkt. # 9, at 1.

On April 24, 2008, State Farm received a telephone call from Detective Kreg Sloan of the Okanogan County Sheriff's Office. Detective Sloan stated that the prime suspect in the investigation

---

[2] State Farm issued the policy while Donald Biles lived in Colorado. Dkt. # 59, at 10. Butterfly-Biles was designated as a beneficiary while Butterfly-Biles and Donald Biles lived in Washington. Id. at 11.

[3] At the time the beneficiary designation was executed, their names were Robyn L. Biles and Dawn L. Biles. They currently reside in Arizona. Dkt. # 22, at 2.

[4] The "report of death" form that Butterfly-Biles submitted to State Farm (Dkt. # 55-9) is not dated. However, Butterfly-Biles does not dispute State Farm's statement that she filed a claim on April 15, 2008. Dkt. # 59, at 6. By this date, Butterfly-Biles was a resident of Oklahoma. Id. at 11.

[5] Butterfly-Biles states that she does not actually know how Donald Biles died, and that she "listed 'homicide' on the insurance application simply because that is what was stated in the death certificate [she] submitted." Dkt. # 59-2, at 1.

2

was Butterfly-Biles' brother, and that Kathryn had not been ruled out as a suspect.[6] Dkt. # 55-11, at 1. The parties dispute the extent of the contact between State Farm and Detective Sloan during State Farm's investigation. State Farm states that it communicated with Detective Sloan "on numerous occasions," Dkt. # 55, at 3, while Butterfly-Biles "denies the implication . . . that State Farm had more than a couple of cursory contacts with the Okanogan County Sheriff's office during the course of its investigation," Dkt. # 59, at 6. It is difficult to determine the extent of these contacts because State Farm lost the original claim file. Dkt. # 59-4, at 2. However, State Farm produced records of at least four attempts to contact the Okanogan County Sheriff's Office after Butterfly-Biles filed her claim. Dkt. ## 55-13, at 1; 55-15, at 1; 55-16, at 1; 55-17, at 1. Detective Sloan states that the investigation of Donald Biles' death is "an active, on-going investigation," and that Butterfly-Biles "is a suspect and person of interest." Dkt. # 55-12. State Farm did not conduct an independent investigation into Donald Biles' death, and it did not interview Butterfly-Biles as part of its review of her claim. Dkt. # 59-5, at 7-11. However, the Okanogan County Sheriff's Office informed State Farm that blood found in Donald Biles and Butterfly-Biles' home had been cleaned up, and that blood was found in the couple's automobile. Dkt. # 55-14. According to the Sheriff's Office, Butterfly-Biles originally stated that the blood was fish blood, and then that it was hamburger blood. The blood was determined to be Donald Biles'. Id.

State Farm informed Butterfly-Biles' counsel by letters dated April 28, 2008, July 2, 2008, December 18, 2008, and January 16, 2009 that "due to the circumstances of death" it was waiting

---

[6] Butterfly-Biles objects that Detective Sloan's statements are inadmissible hearsay. Dkt. # 59, at 6. However, they are not hearsay to the extent they are offered to show their effect on State Farm. Further, State Farm provided an affidavit by Detective Sloan in which he states that Butterfly-Biles is a suspect and person of interest in the death of Donald Biles, and that he informed State Farm of that fact. Dkt. # 55-12, at 1.

3

for information from the Okanogan County Sheriff's Office. Dkt. ## 55-20, 55-21, 55-22, 55-23. In December 2008 and January 2009, State Farm attempted to obtain contact information from the Okanogan County Sheriff's Office concerning Donald Biles' mother, Robyn Biles McCormick, and Dawn Biles Harrington.[7] Dkt. ## 55-16, 55-17.

Butterfly-Biles filed her complaint in this Court on February 20, 2009, alleging that State Farm breached its insurance contract by refusing to pay her death benefits in a timely manner. Dkt. # 2, at 5. She further alleges that State Farm acted in bad faith by "failing to conduct a legitimate investigation, delaying payment and using unsupported suspicion and conjecture as an excuse for such delay." Id. On March 18, 2009, State Farm filed an answer (Dkt. # 5) in which it asserted that it was ready, willing, and able to make payment under the policy to the appropriate beneficiary or beneficiaries. Dkt. # 5, at 5. On May 15, 2009, State Farm filed a First Amended Counterclaim in Interpleader[8] (Dkt. # 15), requesting that the Court determine the proper beneficiary. Pursuant to the Court's Order of July 16, 2009 (Dkt. # 23), State Farm deposited with the Registry of the Court in interpleader $159,619.65. State Farm and Butterfly-Biles disagree as to whether this is the proper amount due under the policy. Dkt. ## 55, at 2; 59, at 8.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp.

---

[7] Butterfly-Biles "denies that State Farm made serious attempts to locate the contingent beneficiaries" before the instant suit was filed. Dkt. # 59, at 7.

[8] State Farm filed a virtually identical Counterclaim in Interpleader (Dkt. # 14) less than an hour earlier. The second document is not truly an amended counterclaim, as the only difference is that the first document was docketed without a jury demand and the second document was docketed with a jury demand.

4

v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court draws "all justifiable inferences," id. at 254, and construes the record in the light most favorable, Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998), to the party opposing summary judgment.

**III.**

State Farm seeks summary judgment on Butterfly-Biles' claims for breach of contract and bad faith. State Farm argues that it is entitled to summary judgment because it filed an interpleader action and deposited the policy benefits with the Court and, thus, has not failed to perform under the insurance contract. It further argues that it had a legitimate basis to delay payment of Butterfly-Biles' claim and, therefore, is entitled to summary judgment on the bad faith claim. Butterfly-Biles argues that State Farm breached its contract by failing to pay the benefits she is owed. She further argues that State Farm is not entitled to summary judgment on her bad faith claim because it conducted an inadequate investigation and had no legitimate basis upon which to withhold payment.

A.   <u>Choice of Law</u>

The Court must determine what law applies to each claim before addressing its merits. A federal court sitting in diversity applies the choice of law rules of the state in which it sits. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941). Therefore, this Court applies Oklahoma's choice of law rules to determine what law applies to Butterfly-Biles' claims.

State Farm and Butterfly-Biles agree that Colorado law governs the breach of contract claim.[9]   Dkt. ## 55, at 6; 59, at 10. Oklahoma looks to the place of contract performance or formation to determine choice of law in a breach of contract action. OKLA. STAT. tit. 15, § 162; <u>see also</u> <u>Harvell v. Goodyear Tire and Rubber Co.</u>, 164 P.3d 1028, 1033-34 (Okla. 2006). It is undisputed that the policy was entered into in Colorado. Dkt. ## 55, at 6; 59, at 10. Therefore, Colorado law applies to Butterfly-Biles' breach of contract claim.

---

[9]   The Court has not been provided with a copy of the insurance policy, nor has any party argued for the application of a choice of law provision therein.

State Farm and Butterfly-Biles also agree that Washington's slayer statute,[10] WASH. REV. CODE §§ 11.84.020, 11.84.100, should apply to this case. Dkt. ## 55, at 8; 59, at 12. It is not clear which of Oklahoma's choice of law rules should be used to determine which state's slayer statute applies; slayer statutes affect obligations under insurance contracts, but also sound in inheritance and succession. Looking to both the place of contracting and the place of the decedent's domicile,[11] the Court finds that the Washington slayer statute is the most appropriate to apply in this case.[12] Butterfly-Biles was designated as a beneficiary while Donald Biles lived in Washington. The couple lived in Washington when Donald disappeared and allegedly was murdered, and Donald's body was discovered in Washington. Oklahoma, Colorado, and Arizona may also have interests in the application of their slayer statutes, but Washington's interest is the greatest. Application of the Washington slayer statute would not be contrary to the public policies of Oklahoma, Colorado, or Arizona, because each state has a similar slayer statute. Compare WASH. REV. CODE §§ 11.84.020, 11.84.100 with OKLA. STAT. tit. 84, § 231; COLO. REV. STAT. § 15-11-803; ARIZ. REV. STAT. § 14-

---

[10] A slayer statute is a law that prevents a beneficiary who has participated in the wrongful killing of the insured from collecting death benefits. These laws codify or complement the common-law concept that "[i]t would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of the party whose life he had feloniously taken." Mut. Life Ins. Co. v. Armstrong, 117 U.S. 591, 600 (1886); see also Cont'l Bank and Trust Co. v. Maag, 285 F.2d 558, 560 (10th Cir. 1960) ("courts have adopted the view, except in instances involving controlling statutory provisions, that when a beneficiary murders the insured he may not collect the policy proceeds"). Washington, Oklahoma, Colorado, and Arizona each has a slayer statute. See infra.

[11] Under Oklahoma law, courts look to the law of the testator's domicile to interpret wills OKLA. STAT. tit. 84, § 20, and the law of the decedent's domicile to determine disposition of personal property, see OKLA. STAT. tit. 60, § 311.

[12] Further, applying the slayer statute of a state other than the one in which the killing occurred would undermine public policy interests by allowing a slayer-claimant to escape the consequences of his or her actions by killing the insured and then moving to a state with a more favorable slayer law.

2803. This similarity also means that the result in this case would be the same if the Court were to apply Oklahoma, Colorado, or Arizona's slayer statute.

State Farm and Butterfly-Biles disagree as to what law applies to the bad faith claim. State Farm argues that Oklahoma law applies, Dkt. # 55, at 8, while Butterfly-Biles argues that Washington law applies, Dkt. # 59, at 12. Although bad faith is associated with breach of contract, it is an independent tort under Oklahoma law.[13]  Oklahoma uses the "most significant relationship" test to determine choice of law in tort cases. Bernal v. Charter Cty. Mut. Ins. Co., 209 P.3d 309, 315 (Okla. 2009). Under this test, a court considers:

> (1) the place where the injury occurred,
> (2) the place where the conduct causing the injury occurred,
> (3) the domicile, residence . . . place of incorporation and place of business of the parties, and
> (4) the place where the relationship, if any, between the parties occurred.

Brickner v. Gooden, 525 P.2d 632, 637 (Okla. 1974). The first two factors point to Oklahoma. Butterfly-Biles made her insurance claim while a resident of Oklahoma, State Farm handled her claim while she lived in Oklahoma, any benefits would be paid to her in Oklahoma, and she suffered her alleged injuries in Oklahoma. The third factor points to Oklahoma and Illinois because Butterfly-Biles lives in Oklahoma and State Farm is incorporated in Illinois. Dkt. # 16, at 1. However, State Farm does business in Oklahoma. Id. The fourth factor points to Washington, because Butterfly-Biles was named as a beneficiary while she and Donald Biles lived in Washington. Viewing these factors and the various states' interests as a whole, the Court finds that Oklahoma has the most significant relationship to Butterfly-Biles' bad faith claim.

---

[13]  It is also an independent tort under Colorado law, State Farm Mut. Auto. Ins. Co. v. Brekke 105 P.3d 177, 188 (Colo. 2004), and Washington law, St. Paul Fire and Marine Ins. Co. v. Onvia, Inc., 196 P.3d 664, 130 (Wash. 2008).

Therefore, the Court will apply Colorado law to Butterfly-Biles' breach of contract claim, employ Washington's slayer statute, and apply Oklahoma law to her bad faith claim.

B.     Breach of Contract

An insurance policy is subject to general rules of contract interpretation. Am. Family Mut. Ins. Co. v. Allen, 102 P.3d 333, 340 (Colo. 2004). Under Colorado law, "a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." W. Distrib. Co. v. Diodosio, 841 P.2d 1053, 1058 (Colo. 1992).

State Farm argues that it is entitled to summary judgment because Butterfly-Biles cannot show that it failed to perform under the policy. Dkt. # 55, at 9. State Farm argues that it properly filed an interpleader action, and has not refused to pay the funds to the proper beneficiary. Id. Butterfly-Biles argues that she is the proper beneficiary, and that State Farm breached by failing to pay her claim. Dkt. # 59, at 13.

Washington's slayer statute prohibits "any person who participates, either as a principal or an accessory before the fact, in the willful and unlawful killing" of the decedent from receiving any benefit as a result of the decedent's death. WASH. REV. CODE §§ 11.84.010, 11.84.020. If Butterfly-Biles were a slayer under the statute, she would not be able to receive Donald Biles' life insurance benefits.[14] Cook v. Gisler, 582 P.2d 550, 554 (Wash. Ct. App. 1978). The Court finds that

---

[14]   Butterfly-Biles correctly states that the party claiming the benefit of the slayer statute ultimately bears the burden of proof. However, Butterfly-Biles's assertion that, "through the [i]nterpleader maneuver, State Farm is effectively saying that Butterfly-Biles now has the burden to prove she was not a slayer to recover the money from the registry of the Court" is incorrect. Dkt. # 59, at 14. The interpleader action allows State Farm to avoid the

9

there are genuine issues of material fact regarding the cause of Donald Biles' death and, thus, whether Butterfly-Biles is entitled to benefits under the policy. Cf. Hagedorn v. Metlife, No. C05-1083Z, 2006 WL 1148230, at *4-5 (W.D. Wash. April 27, 2006) (unpublished) (granting beneficiary's motion for summary judgment where insurer failed to show a genuine issue of material fact as to whether the decedent's death was the result of an unlawful killing). Butterfly-Biles states that she did not kill her husband. Dkt. # 59-2, at 1. However, Butterfly-Biles is a "suspect and person of interest" in the Okanogan County Sheriff's Office's ongoing investigation of Donald Biles' death. Dkt. # 55-12. There are genuine issues of material fact regarding Butterfly-Biles' entitlement to benefits under the policy.

Despite these genuine issues of material fact as to the identity of the proper beneficiary(ies), State Farm may be entitled to summary judgment if Butterfly-Biles cannot establish that it refused to perform under the policy. Butterfly-Biles interpreted State Farm's deferral as a denial. She decided that "State Farm would never pay me until the Sheriff in Okanogan County completed his investigation. . . . [I]t became quite clear to me that State Farm was going to hold on to the benefits forever and force me to sue them if I ever wanted to receive the benefits." Dkt. # 59-2. State Farm repeatedly sent letters to Butterfly-Biles informing her that it was waiting for more information from the Okanogan County Sheriff's Office before making a determination on her claim. Dkt. ## 55-20, 55-21, 55-22, 55-23. In its answer one month after Butterfly-Biles filed the instant suit, State Farm admitted that it was ready, willing, and able to make payment under the policy to the appropriate

---

potential for double liability if it pays benefits to the wrong person; it does not affect the burden of proof in this case. Going forward, Robyn Biles McCormick and Dawn Biles Harrington have the burden to show that the slayer statute disqualifies Butterfly-Biles from receiving the funds that State Farm deposited with the Court.

10

beneficiary or beneficiaries. Dkt. # 5, at 5. Thereafter, it interpleaded the secondary beneficiaries and deposited funds with the Court.[15] Thus, State Farm has not refused to make payment under the policy. Because it has not refused to pay benefits, State Farm cannot be liable for breach of contract.

Subjecting State Farm to contract liability under these circumstances would defeat the purpose of the interpleader procedure, which is to avoid double liability where the identity of the proper beneficiary is unclear. In fact, courts have criticized insurers for failing to file interpleader actions where there was evidence that the primary beneficiary could be a slayer. In Messinger v. New York Life Insurance Co., 581 P.2d 1381, 1384 (Wash. Ct. App. 1978), the Court of Appeals of Washington admonished the defendant insurer for not filing an interpleader action where it had refused payment to the primary beneficiary "because it suspected that . . . [she] had murdered the insured." The Court also noted that "the company never claimed that it was not liable on the policy, only that [the primary beneficiary] was disqualified . . . due to the slayer statute." Id. at 1383. Under those circumstances, as here, interpleader was the insurer's best course of action.

The Kansas Supreme Court reached the same conclusion in Harper v. Prudential Insurance Co., 662 P.2d 1264 (Kan. 1983). In that case, the insurance company made an independent investigation into the circumstances of the policyholder's death. Law enforcement personnel told the investigator that they did not have enough information to make an arrest, but the investigator believed that there was enough doubt regarding the primary beneficiary's involvement in the death

---

[15]   State Farm's alleged delay in interpleading the funds is relevant to bad faith, not to breach of contract. Cork v. Sentry Ins., 194 P.3d 422, 427 (Colo. Ct. App. 2008) ("[a]n insurer may face liability for bad faith breach of insurance contract by unreasonably denying payment of a valid claim or by failing reasonably to investigate a claim or to gather facts"). Further, interpleader is not an attempt to avoid contractual obligations, as Butterfly-Biles contends. Dkt. # 59, at 16. State Farm's contractual obligation is to pay benefits to the proper beneficiary, which it will do.

11

to warrant delaying payment. Id. at 1268. Nevertheless, the insurance company paid the proceeds to the primary beneficiary. Id. Years later, the beneficiary was convicted of murdering the policyholder. Id. The secondary beneficiaries then filed suit for the decedent's life insurance proceeds. Id. Despite the fact that Kansas' slayer statute applied only if the slayer was actually convicted, the court held that "the law simply could not be that, if the primary beneficiary has not yet been convicted, the insurance company is completely free to pay the beneficiary at any time after the death of the insured." Id. at 1274. The court determined that the insurance company "should have either delayed making payment . . . or filed an interpleader action. By interpleading the contingent beneficiary so that he might have an opportunity to protect his rights, [the insurer] could have protected itself from a double liability." Id.; see also Glass v. United States, 506 F.2d 379, 382 (10th Cir. 1974) (holding that the insurer "negligently and erroneously paid the . . . proceeds prematurely" to a slayer and noting that the insurer "opted not to interplead and thus, in effect, protect itself against any and all claimants"). These cases suggest that it would be inappropriate for insurers to do what Butterfly-Biles insists is required here: for insurers to pay suspected slayer beneficiaries immediately, rather than file interpleader actions or delay payment pending investigation.

Butterfly-Biles cites United Investors Life Insurance Company v. Grant, No. 2:05-CV-1716-MCE-DAD, 2006 WL 1282618 (E.D. Cal. May 9, 2006) (unpublished) for the proposition that State Farm cannot "use the [i]nterpleader to avoid [her] contract claim." Dkt. # 59, at 15. However, the case supports State Farm's position regarding the breach of contract claim, not Butterfly-Biles'. Donna Grant submitted a claim for her husband's life insurance benefits. The death certificate listed his cause of death as homicide. Id. at *1. The insurance company contacted the investigating

sheriff's department, which stated that the investigation remained ongoing and no one had been cleared of involvement. Id. Thirteen months later, the insurance company filed an interpleader action. Grant filed cross-claims for, among other things, breach of contract and breach of the implied covenant of good faith and fair dealing. Id. at *2. The court noted that "an insurance company may be liable for negligently paying a primary beneficiary if that beneficiary is ultimately found to have murdered the insured," and found that the insurer had a "'real and reasonable fear of multiple liability'" in the case. Id. at *6. Thus, the court found that the insurance company was entitled to judgment in interpleader and was "absolved of any future liability with respect to the policy proceeds." Id. Thus, the California court determined that the interpleader extinguished the insurer's liability for the policy proceeds under circumstances very similar to those here: where the primary beneficiary was a suspect in the ongoing investigation of the policyholder's murder.[16]

Butterfly-Biles argues that there is a genuine issue of material fact that precludes summary judgment regarding the proper amount due under the policy. State Farm has deposited $159,619.65 into the Registry of the Court. State Farm asserts that this is the maximum amount of funds available under the policy, including interest accrued from July 1, 2001 (prior to the date of Donald

---

[16] The court went on to analyze Grant's breach of the implied covenant of good faith and fair dealing and tort claims because it found that the interpleader filing did not absolve the insurer of liability for its tortious conduct prior to filing the interpleader. Grant, 2006 WL 1282618, at *7. Grant's contract-based claim survived because, under California law, "[a]n unreasonable delay in paying a covered claim may support both breach of contract, as well as the related claim for breach of the implied covenant of good faith and fair dealing." Id. (emphasis added). Butterfly-Biles has not provided any citations that Colorado, Washington, or Oklahoma would treat a claim regarding an insurance company's conduct in handling a claim as a contract claim, rather than a tort claim. The Court's research revealed that each of the three states treats bad faith as a separate tort. See III.A, supra. Therefore, the California court's statement in Grant that the insurer's conduct could support a breach of contract claim is not relevant to this case.

13

Biles' disappearance). Dkt. # 55, at 5-6. Butterfly Biles denies that this is the proper amount due under the policy. Dkt. # 59, at 14. However, she supports this assertion with citations to Oklahoma law regarding an award of attorney fees and costs to the prevailing party in an insurance case and the interest rate applicable to verdicts where the insured is the prevailing party. Id.; OKLA. STAT. tit. 36, § 3629. This law is inapposite for two reasons. First, Butterfly-Biles is not the prevailing party on her breach of contract claim. See supra. Second, the amount due under the policy must be calculated pursuant to Colorado law, not Oklahoma law.[17]  See III.A., supra.

State Farm detailed the method by which it arrived at the $159,619.65 amount. Dkt. # 55-2, at 2-3.  Butterfly-Biles has not raised a valid objection to this calculation. To survive summary judgment on this issue, she must present some evidence that State Farm's calculations are incorrect. Her bare assertions that the amount is improper and that she does not know the proper amount do not create a genuine issue of material fact.

For these reasons, State Farm is entitled to summary judgment on Butterfly-Biles' breach of contract claim.

---

[17]   Any tort liability of State Farm would be determined pursuant to Oklahoma law. See III.A., supra. However, any potential tort damages would be separate from the policy benefits and, thus, would not affect the amount deposited in connection with the interpleader action.

14

C.   Bad Faith

The Court applies Oklahoma law to Butterfly-Biles' bad faith claim. See III.A., supra. Under Oklahoma law, "the essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy." McCorkle v. Great Atlantic Ins. Co., 637 P.2d 583, 587 (Okla. 1981); see also Christian v. Am. Home Assurance Co., 577 P.2d 899, 905 (Okla. 1977). An insurer does not act in bad faith "when the insurer's denial of a claim is based on a legitimate dispute between the insurer and the insured." Claborn v. Wash. Nat'l Ins. Co., 910 P.2d 1046, 1050 (Okla. 1996). However, "a legitimate dispute as to coverage will not act as an impenetrable shield against a valid claim of bad faith. An insured may pursue a claim of bad faith even where the insurer has a legitimate defense to coverage. However, in order to pursue such a claim, the insured must present sufficient 'evidence reasonably tending to show bad faith.'" Timberlake Constr. Co. v. U.S. Fid. and Guar. Co., 71 F.3d 335, 344 (10th Cir. 1995) (applying Oklahoma law) (quoting Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993)). "[I]f there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." McCorkle, 637 P.2d at 587. The level of culpability required for bad faith is "more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award . . . ." Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1093 (Okla. 2005).

In this case, State Farm's delay in making a determination on Butterfly-Biles' claim and filing of an interpleader action are based on a legitimate dispute as to coverage. The suspicious

15

circumstances of Donald Biles' death, and the fact that the Okanagan County Sheriff's Office had not eliminated Butterfly-Biles as a suspect created a legitimate dispute as to Butterfly-Biles' entitlement to benefits.[18] State Farm's uncertainty regarding the proper beneficiary is supported by more than mere "speculation and conjecture," as Butterfly-Biles alleges. Dkt. # 59, at 23. In addition to the evidence that Butterfly-Biles remained a suspect, State Farm had evidence that she changed her story regarding the source of blood found in the family automobile, and that her two stories were false, Dkt. # 55-14, at 2, and that Butterfly-Biles' brother was the prime suspect, Dkt. # 55-11.[19] Further, Butterfly-Biles' alibi is not airtight. She argues that she could not have killed her husband because she was in the hospital the night he disappeared. Dkt. # 59-2, at 1. However, Donald Biles' disappearance was not reported until the day after Butterfly-Biles was discharged from the hospital. Dkt. # 55-4, at 5. This evidence was sufficient to create a legitimate dispute as to coverage. Therefore, it was not unreasonable for State Farm to avoid the risk of double liability by delaying payment and filing an interpleader after Butterfly-Biles filed suit.

Further, had it paid Butterfly-Biles while she was still a suspect, State Farm would have risked contract and tort liability to the secondary beneficiaries. See Harper, 662 P.2d at 1274 (holding the insurance company liable to the secondary beneficiaries where it paid benefits to the

---

[18] Contrary to Butterfly-Biles' assertion, State Farm did not need conclusive proof that she was a slayer in order to defer a decision on her claim or file an interpleader action. Dkt. # 59, at 19. If this were the case, slayers could overcome prohibitions on their ability to wrongfully receive benefits simply by filing claims before the relevant murder investigations concluded.

[19] Under Washington's slayer statute, a slayer is anyone who "participates" in the unlawful killing of the insured. WASH. REV. CODE §§ 11.84.010, 11.84.020. Thus, a person may be a slayer even though not a principal in the crime.

16

slayer-claimant, even where the sheriff had not yet made an arrest). Delaying a payment decision in order to avoid the risk of double liability cannot be bad faith.

Butterfly-Biles contends that State Farm is not entitled to summary judgment on her bad faith claim because it did not conduct an independent investigation of Donald Biles' death. However, this is based on Butterfly-Biles' erroneous assumption that State Farm needed conclusive proof that she was a slayer before deferring a decision on her claim.[20] This is not the case. See supra. State Farm had enough evidence to create a legitimate dispute as to coverage, which is all that was needed to justify deferring a payment decision. Further, "[w]hen a bad faith claim is premised on inadequate investigation, the insured must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information." Timberlake, 71 F.3d at 345.[21] There is nothing in the record to suggest that additional information would have eliminated State Farm's legitimate doubt regarding whether Butterfly-Biles was the proper beneficiary. State Farm contacted and followed up with Detective Sloan regarding his ongoing investigation. Dkt. ## 55-11, at 1; 55-13, at 1; 55-15, at 1; 55-16, at 1; 55-17, at 1. The information State Farm received from him was sufficient to create a legitimate dispute as to coverage. Butterfly-Biles has not provided any evidence that further investigation would have eliminated this dispute. If State Farm had interviewed Butterfly-Biles, this interview would not have resolved doubts in her favor, as Butterfly-

---

[20]    State Farm has not denied Butterfly-Biles' claim. See supra. State Farm did not need conclusive proof to file an interpleader action; in fact, such proof would render an interpleader action unnecessary because it would establish the proper beneficiary.

[21]    Butterfly-Biles' quotation from Badillo, 121 P.3d at 1096, is inapposite because it concerns an insurer's duty to communicate with the insured when negotiating settlement of third party claims against the insured.

17

Biles' alibi is not airtight.  See supra.  Further, as of October 29, 2009, Butterfly-Biles remained a suspect.  Dkt. # 55-12, at 1.

Butterfly-Biles further contends that a jury must determine whether State Farm's delay in filing an interpleader action was in bad faith.  "[A] claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient.  The decisive question is whether the insurer had a 'good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy."  Buzzard v. Farmers Ins. Co., 824 P.2d 1105, 1109 (Okla. 1991) (emphasis in original) (quoting Buzzard v. McDanel, 736 P.2d 157, 159 (Okla. 1987)).  "[A] decision to withhold or delay payment, if based on a legitimate dispute or reasonable justification (legal or factual) cannot form the basis of bad faith tort liability."  Barnes v. Okla. Farm Bureau Mut. Ins. Co., 11 P.3d 162, 171 (Okla. 2000).  Butterfly-Biles filed her claim with State Farm on April 15, 2008.  Dkt. # 59, at 6.  From this date on, State Farm contacted and followed up with Detective Sloan regarding the ongoing murder investigation, Dkt. ## 55-13, 55-15, 55-16, 55-17, and repeatedly informed Butterfly-Biles that it did not have enough information to make a decision on her claim, Dkt. ## 55-20, 55-21, 55-22, 55-23.  She filed her complaint in this Court on February 20, 2009.  Dkt. # 2.  State Farm filed its answer admitting liability for the policy benefits on March 18, 2009, Dkt. # 5, and filed its First Amended Counterclaim in Interpleader on May 15, 2009.  Dkt. # 15.  Throughout this time, there was a legitimate dispute as to coverage.  Butterfly-Biles has provided no evidence from which a jury could find that State Farm handled her claim in bad faith.[22]  The undisputed facts show that State Farm attempted to obtain information

---

[22] Further, Butterfly-Biles has provided no evidence from which a jury could find that any delay, if improper, was the result of anything more than negligence.  A merely negligent delay cannot constitute bad faith.  See Badillo, 121 P.3d at 1093.

18

from Detective Sloan and kept Butterfly-Biles informed as to the status of her claim. Because State Farm's deferral of the payment decision was based on a legitimate dispute as to coverage, it can not constitute bad faith.[23]  Barnes, 11 P.3d at 171.

Subjecting State Farm to liability for bad faith under these circumstances would place insurers in an untenable position: if they were to pay disputed claims too quickly, they would risk contract and tort liability to the secondary beneficiaries; however, if they were to delay payment, they would risk tort liability to the primary beneficiary. In this case, State Farm's conduct was based on a legitimate dispute as to coverage.  State Farm never denied that it owed Donald Biles' benefits to the proper beneficiary. No reasonable jury could determine that State Farm acted unreasonably under the circumstances. For these reasons, State Farm is entitled to summary judgment on Butterfly-Biles' bad faith claim.

**IT IS THEREFORE ORDERED** that Defendant State Farm Life Insurance Company's Motion for Summary Judgment (Dkt. # 55) is **granted**.

**DATED** this 21st day of January, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[23]  The result would be the same under the Washington law cited by Butterfly-Biles. Dkt. # 59, at 16-18. Under Washington law, an insurer acts in bad faith when it denies coverage without a reasonable basis for doing so. Indus. Indem. Co. of the Nw. v. Kallevig, 792 P.2d 520, 526 (Wash. 1990). "Suspicion and conjecture" are not reasonable bases for denial. Id. In this case, State Farm's concerns regarding coverage were based on fact, rather than mere suspicion. See supra.  Therefore, the decision to delay coverage would not be in bad faith under Washington law.