UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ROBYN BILES MCCORMICK, and** ) <br> **DAWN BILES HARRINGTON,** ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> **KATHRYN BUTTERFLY-BILES,** ) <br> ) <br> Defendant. ) | Case No. 09-CV-0086-CVE-PJC |

### OPINION AND ORDER

Now before the Court is Defendant's Motion in Limine Combined with Brief in Support (Dkt. # 76). Defendant Kathryn Butterfly-Biles seeks to preclude plaintiffs Robyn Biles McCormick and Dawn Biles Harrington (together, plaintiffs) from introducing certain evidence at trial.

**I.**

Butterfly-Biles was the wife of Donald Biles. On or about August 1, 2001, Butterfly-Biles notified the Okanogan County, Washington Sheriff's Office that Donald Biles was missing. Dkt. # 55-4, at 5. Five years later, on August 5, 2006, a firefighter discovered Donald Biles' remains in a forest in a Washington state park. Dkt. ## 55-5, at 1; 55-7, at 1. The medical examiner determined that Donald Biles died of a gunshot wound to the head. Dkt. # 55-7, at 1. Butterfly-Biles is willing to stipulate that Donald Biles' death was the result of a homicide. Dkt. # 76, at 8. Detective Kreg Sloan of the Okanogan County Sheriff's Office was assigned to the investigation, which is ongoing.

This case originated as a claim by Butterfly-Biles against State Farm Life Insurance Company (State Farm) to recover life insurance policy proceeds. Dkt. # 2. Butterfly-Biles is the primary beneficiary of Donald Biles' life insurance policy, which was issued by State Farm. Dkt. # 55-3, at 1. Plaintiffs, Donald Biles' daughters, are the successor beneficiaries of the policy. Id.

Butterfly-Biles made a claim for the insurance policy proceeds. State Farm delayed payment due to the circumstances of Donald Biles' death. Washington's slayer statute prohibits "any person who participates, either as a principal or an accessory before the fact, in the willful and unlawful killing" of the decedent from receiving any benefit, including life insurance proceeds, as a result of the decedent's death. WASH. REV. CODE §§ 11.84.010, 11.84.020. After Butterfly-Biles filed a complaint in this Court alleging breach of contract and bad faith, State Farm deposited with the Registry of the Court in interpleader the policy proceeds. State Farm argued that it was unable to determine the proper beneficiary because it believed there was a possibility that Butterfly-Biles was involved in her husband's murder. The Court granted summary judgment to State Farm on Butterfly-Biles' claims. Dkt. # 69. Thus, the sole issue for trial is whether Butterfly-Biles or plaintiffs are the proper beneficiaries under the policy.[1] If Butterfly-Biles is a slayer under Washington law, she is not the proper beneficiary. If she is not a slayer, she is the proper beneficiary.

**II.**

Butterfly-Biles seeks to exclude the following evidence: certain testimony of Detective Sloan; any testimony by Robin Biles McCormick, including testimony regarding information provided to her by Detective Sloan; State Farm's claim investigation file; Butterfly-Biles' medical records; the autopsy report of Donald Biles; and any testimony from State Farm's bad faith experts. Dkt. # 76, at 1. The Court will consider each category of evidence separately.

---

[1] After State Farm was terminated as a party, the Court entered an order re-aligning the remaining parties. Dkt. # 73. As the secondary beneficiaries bear the burden of proof on the application of the slayer statute, the Court designated the secondary beneficiaries as plaintiffs and Butterfly-Biles as defendant. Id.

A.   Kreg Sloan's Testimony

Sloan testified that the murder investigation is not complete, and that "[Butterfly-Biles] is a suspect in the murder . . . ." Dkt. # 84-2, at 8. State Farm's counsel asked him "given her statement that she was in the hospital and after speaking with her and [other witnesses] . . . and based on the rest of your investigation, were you able to eliminate Kathryn Biles as a suspect in the murder of Donald Biles?" He replied "No." Id. Counsel asked him "Is she still a suspect today?" and he answered "Yes." Id. In response to further questioning, he testified that "I can not rule her out as being involved in the murder." Id. Butterfly-Biles argues these statements should be excluded because they are irrelevant, unduly prejudicial, and they invade the province of the jury. Dkt. # 76, at 3-5.

Butterfly-Biles' contention that these statements are irrelevant is without merit. The fact that the investigating officer considers her a suspect - or merely has not eliminated her as a suspect - is certainly relevant to whether or not she was involved in Donald Biles' death. Butterfly-Biles contends that "[n]ot being 'eliminated' as a suspect is much different than being actively investigated as a prime suspect. It is likely that a jury would be unable to make this distinction . . . ." Dkt. # 76, at 4. Butterfly-Biles' counsel had the opportunity to cross-examine Sloan during his deposition and, in fact, did question him regarding the difference between "not ruled out as a suspect" and "is a suspect." Dkt. # 84-2, at 9. Butterfly-Biles may argue at trial that her status as a suspect does not, in fact, tend to show that she participated in Donald Biles' death; however, this does not make the evidence irrelevant. Butterfly-Biles also argues that Sloan's inability to eliminate her as a suspect is irrelevant because she "may never technically be able to be 'eliminated' as a suspect" because the investigation could stay open forever. Dkt. # 76, at 4 n.1. Butterfly-Biles'

3

counsel questioned Sloan regarding the potentially indefinite duration of a murder investigation. Dkt. # 84-2, at 13. Again, this is an issue to be argued to the jury.

Butterfly-Biles argues that Sloan's statements should be excluded because they are more prejudicial than probative. See Fed. R. Evid. 403. She argues that there is a substantial risk that the jury will "speculate that the statement from Detective Sloan is his opinion that evidence against Mrs. Biles is strong." Dkt. # 76, at 4. She also argues "it would force the jury to speculate as to what it actually means." Dkt. # 90, at 2. She cites Stanolind Oil & Gas Co. v. Kimmel, 68 F.2d 520, 522 (10th Cir. 1934), for the proposition that "the risk of speculation by the jury is prejudicial and the statement is therefore inadmissible." Dkt. # 76, at 4. What the jury would be asked to do in this case is not the speculation discussed in Stanolind. In Stanolind, the issue was whether additional oil wells should have been drilled, and what results would have followed if they had been drilled. 68 F.2d at 522. The trial court allowed the testimony, and the Tenth Circuit affirmed. Asking a jury to assess hypothetical outcomes is not the same as presenting a jury with a statement capable of more than one interpretation. It is likely that the potential for undue prejudice does not substantially outweigh the statement's probative value in this case. See Fed. R. Evid. 403.

Further, Butterfly-Biles argues that Sloan's statement that Butterfly-Biles has not been ruled out as a suspect is inadmissible because it invades the province of the jury. She argues that it "amounts to nothing more than his ambiguous opinion about the underlying evidence." Dkt. # 76, at 4. In Sims v. Great American Life Insurance Co., 469 F.3d 870, 890 (10th Cir. 2006), the Tenth Circuit affirmed the trial court's exclusion of an investigating officer's opinion that a car accident was a suicide. It stated that "[t]he investigating officer's opinion [on whether the decedent committed suicide] was no more than speculation based on the same facts that the jury had before

4

it." Id. This case differs from Sims. Sloan's statement is not a conclusion or opinion regarding the cause of Donald Biles' death; it is a statement regarding the status of the investigation.

It is highly unlikely that a jury would view Sloan's inability or refusal to eliminate Butterfly-Biles as a suspect as dispositive proof that she was involved in the death of her husband. Nonetheless, any such risk could be eliminated by instructing the jury to independently weigh and evaluate the evidence.[2]

Butterfly-Biles argues that certain portions of Sloan's deposition testimony contain inadmissible hearsay. Dkt. # 76, at 5. Butterfly-Biles has filed specific objections to plaintiffs' deposition designations, and Magistrate Judge Cleary will make a determination on each individual objection. Therefore, this portion of the motion is moot.

Finally, Butterfly-Biles argues that Sloan's testimony regarding communications with State Farm is irrelevant and should be excluded. Dkt. ## 76, at 5-6; 90, at 7. However, the mere fact that State Farm is no longer a party to this case does not render any conversations Sloan had with State Farm irrelevant. Magistrate Judge Cleary will consider Butterfly-Biles' objections to specific portions of Sloan's testimony. The Court will not issue a blanket ruling excluding all communications between Sloan and State Farm.

---

[2]   Jury instructions could also eliminate any risk that the jury would afford undue weight to Sloan's testimony because he is in a position of authority. See Dkt. # 76, at 4.

B.        Robyn Biles McCormick's Testimony

Butterfly-Biles seeks to exclude testimony "concerning evidence that was not disclosed in Plaintiff's [sic] Responses to Interrogatories."[3] Dkt. # 76, at 6. In her reply brief, Butterfly-Biles identifies this as potential testimony by McCormick as to statements made to her by Sloan.[4] Dkt. # 90. Butterfly-Biles argues that plaintiffs' responses to interrogatories did not list statements made by Sloan to McCormick as evidence supporting their contention that Butterfly-Biles murdered[5] her husband. Dkt. # 76, at 6. If a party fails to provide information in a response to an interrogatory or a supplemental response, that party may not use such information at trial "unless the failure was

---

[3]  Both plaintiffs provided identical responses. Dkt. # 76, at 6.

[4]  As the motion in limine does not identify the potential evidence sought to be excluded and the reply brief mentions McCormick's testimony only, it may be assumed that Butterfly-Biles seeks to exclude no other evidence on this basis.

[5]  Plaintiffs are correct that they do not need to prove that Butterfly-Biles murdered Donald Biles. Dkt. # 80, at 6. A "slayer" is "any person who participates, either as a principal or an accessory before the fact, in the willful and unlawful killing of any other person." WASH. REV. CODE § 11.84.010(5). A person could be a slayer without being a murderer. See Estate of Kissinger, 206 P.3d 665 (Wash. 2009) (determining that decedent's son was a slayer, despite the fact that he had been found not guilty of murder by reason of insanity). Plaintiffs have the burden of proving that Butterfly-Biles is a slayer.

6

substantially justified or is harmless."[6] Fed. R. Civ. P. 37(c)(1). The parties did not base their arguments on Rule 37, but the rule is more relevant than post-trial analyses of unfair surprise at trial.[7]

Before engaging in the Rule 37 analysis, the Court must determine whether plaintiffs' interrogatory responses are as limited as Butterfly-Biles claims they are. The relevant interrogatories and responses are:

> Interrogatory No. 12:   Do you contend that [Butterfly-Biles] murdered her husband?
>
> Response No. 12   Objection[.] The Interrogatory is vague and calls for a legal conclusion.  Subject to the foregoing objection, the [plaintiff] believes that [Butterfly-Biles] took, caused, or procured another to take the life of Donald Biles and would be precluded from receiving any interest in the estate of Donald Biles. In that regard, it is [plaintiff's] understanding that the Okanogan County Sheriff has determined that Donald Biles' death was a result of a gunshot wound to the head and that homicide was the cause of his death. It is [plaintiff's] further understanding that the Sheriff is still investigating her father's death and that they consider this matter to be an open and active investigation. In addition, it is [plaintiff's] understanding that the Okanogan County Sheriff considers [Butterfly-Biles] to be a primary suspect and/or a person of interest in the continuing investigation into her father's death. Due to the ongoing nature of the criminal investigation, none of the parties to this

---

[6]   Butterfly-Biles cites Oklahoma law in support of her contention that McCormick's testimony regarding statements made to her by Sloan would constitute unfair surprise. Dkt. # 76, at 7 (citing State ex. rel. Remington Arms Co. v. Powers, 552 P.2d 1150, 1152 (Okla. 1976)). In diversity (and statutory interpleader) cases, this Court applies the Federal Rules of Evidence and Civil Procedure. See, e.g., Sims, 469 F.3d at 880-83. Nonetheless, Remington does not dictate a different result; that case discusses the purposes behind Oklahoma's discovery rules in the context of a plaintiff's refusal to make a shotgun and shells available for testing out-of-state. 552 P.2d at 1152-53. Oklahoma v. Turner, 183 P.3d 168, 172 (Okla. Civ. App. 2007), does not support Butterfly-Biles' position. In that case, the court held that admission of an appraiser's testimony did not constitute unfair surprise even though the appraiser had not finalized his opinion until the morning of trial. The court granted a new trial for an unrelated reason: because the trial court excluded a separate, independent appraisal. Id. at 172-74.

[7]   It is difficult to see how Butterfly-Biles could be unfairly surprised at trial by McCormick's testimony, since she is aware of it before trial.

7

> litigation, including the [plaintiff] and her attorneys, have been provided with all of the evidence acquired by the Okanogan County Sheriff, but based upon the limited information received to date, it appears that [Butterfly-Biles] would be considered a "slayer" under applicable law and would be precluded from receiving any interest in the estate of Donald Biles, including the life insurance proceeds which are the subject of this action.
>
> Interrogatory No. 13: Identify any specific evidence that you believe supports the position that [Butterfly-Biles] murdered her husband.
>
> Response No. 13: See Answer to Interrogatory No. 12, and all documents previously produced in this matter.

Dkt. # 76, at 6-7. Butterfly-Biles contends that "[i]t is clear that Plaintiffs are relying solely on evidence that Mrs. Biles has not been eliminated as a suspect in her husband's murder." Id. at 7. However, the response mentions "the evidence acquired by the Okanogan County Sheriff." The response contemplates evidence in addition to the mere fact that the Sheriff's office considered Butterfly-Biles a suspect.

However, assuming that the interrogatory response was incomplete (or needed to be supplemented), the Court applies the analysis set forth in Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Co., 170 F.3d 985, 993 (10th Cir. 1999). In determining whether a failure to disclose or supplement is substantially justified or harmless, courts consider "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." Id. At this time, the Court fails to see how Butterfly-Biles would be prejudiced or surprised, especially given the fact that she deposed Sloan. It is not clear whether Butterfly-Biles deposed McCormick. The Court will not exclude McCormick's testimony on this basis at this time.

Butterfly-Biles also argues that McCormick should be precluded from testifying altogether because "it appears that her only basis of testifying would be to discuss hearsay statements from Detective Sloan concerning Mrs. Biles as a 'suspect' . . . ." Dkt. # 90, at 8. This contention is based on speculation as to what McCormick's testimony might be. The Court will not issue a blanket ruling excluding a witness based on a potential hearsay objection. Butterfly-Biles is free to object to specific testimony at trial.

C.  <u>State Farm's Claim File</u>

Plaintiffs state that they do not intend to introduce any documents resulting from State Farm's investigation of Butterfly-Biles' claim. Dkt. # 80, at 8. Butterfly-Biles does not deny that the insurance policy and beneficiary status of the parties are relevant. Dkt. # 90, at 8-9. Thus, it appears that the only disputed documents from the claim file are the policy loan requests submitted by Donald Biles. <u>See</u> Dkt. ## 80, at 8; 90, at 8. The relevance of these loan requests is not clear, although it may be presumed that plaintiffs would introduce them to establish a motive for the homicide. If this is true, the evidence is likely relevant and admissible if properly authenticated.

D.  <u>Butterfly-Biles' Medical Records</u>

Butterfly-Biles contends that her medical records, other than those relating to her hospital stay of July 30, 2001, are irrelevant because she no longer seeks medically-related damages from State Farm. Dkt. # 76, at 8. Plaintiffs seek to introduce medical records to "establish the facts and circumstances surrounding the decedent's murder; . . . impeach [Butterfly Biles] regarding subsequent statements made under oath in this matter; and . . . to allow the jury to fully evaluate [Butterfly Biles'] competency to testify truthfully." Dkt. # 80, at 8-9.

Butterfly-Biles contends that her medical records have no bearing on any fact or circumstance surrounding Donald Biles' death. Dkt. # 90, at 9. However, in her Objection to State

9

Farm's Motion for Summary Judgment Combined with Brief in Support (Dkt. # 59), she stated that she "has multiple sclerosis and it would have been physically impossible for her to carry a dead body to a remote wooded area." Dkt. # 59, at 21. Butterfly-Biles' medical records may be relevant if she asserts that her physical condition makes it impossible for her to be a slayer.

Butterfly-Biles contends that her medical records serve no purpose for impeachment. Plaintiffs must explain how they intend to use the records for impeachment in order for the Court to determine their admissibility for this purpose. Butterfly-Biles also contends that no issue has been raised as to her competency and "it is inappropriate to make such an assertion on the eve of trial." Dkt. # 90, at 9. From the briefs, it is not clear whether plaintiffs seek to impeach Butterfly-Biles' veracity or whether they seek to disqualify her from testifying.

Finally, Butterfly-Biles argues that "some of these records contain inadmissible hearsay and privileged communications between Mrs. Biles and her doctors." Dkt. # 76, at 8. The Court will not issue a blanket ruling excluding medical records on the basis of potential hearsay and privilege objections.

E.   Autopsy Report

Plaintiffs state that they "do not intend to seek admittance of the autopsy report . . . ." Dkt. # 80, at 10. Therefore, this portion of the motion in limine is moot.

F.   State Farm's Bad Faith Expert

Plaintiffs state that they "have no intention of proffering or relying on the testimony sought to be excluded." Id. Therefore, this portion of the motion in limine is moot.

**IT IS THEREFORE ORDERED** that Defendant's Motion in Limine Combined with Brief in Support (Dkt. # 76) is **denied in part** and **moot in part**, as described herein.

**DATED** this 31st day of March, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT